1    WO                                                                      JDN

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                         FOR THE DISTRICT OF ARIZONA

8

9    Tyson McDaniel,                          No.  CV 12-1697-PHX-GMS (LOA)

10                   Plaintiff,

11   vs.                                       **ORDER**

12
     Greg Fizer, et al.,
13
                     Defendants.
14

15          Plaintiff Tyson McDaniel brought this pro se civil rights Complaint under 42

16   U.S.C. § 1983 against multiple Arizona Department of Corrections (ADC) officials (Doc.

17   7).  Before the Court is McDaniel's Motion for Preliminary Injunction (Doc. 30).

18          The Court will deny the motion without prejudice.

19   **I.      Background**

20          McDaniel's claim arose during his confinement at the Arizona State Prison

21   Complex-Florence (Doc. 7).  He is a practicing Orthodox Muslim who fasts throughout

22   the year to condition himself for fasting during Ramadan (*id*.).  In Count I of his First

23   Amended Complaint, McDaniel alleged that Chaplains Miser, Becker, and Mason

24   refused to approve a kosher diet—which met McDaniel's religious and dietary needs—on

25   the ground that he was not sincere enough in his religious beliefs.  McDaniel averred that

26   the ADC Central Office ultimately granted his request for a kosher diet after finding no

27   religious reason to deny the request.   McDaniel alleged that the three Chaplain

28

1   Defendants violated his First Amendment free-exercise rights because their denial of a

2   kosher diet was not reasonably related to any legitimate penological interest.

3       In Count II, McDaniel reasserted the facts in Count I and stated he began receiving

4   a kosher diet; however, it was discontinued after just a few days because Miser said he

5   had to go through the Chaplaincy Department for a religious diet, even though McDaniel

6   provided the approval paperwork from Central Office to Miser, Deputy Warden Fizer,

7   and Correctional Officer (CO) IV Zaborsky.  McDaniel stated that these three Defendants

8   refused to provide him a kosher diet although they knew that their actions burdened his

9   religious exercise and was not reasonably related to a legitimate penological interest.

10  McDaniel claimed that Miser, Mason, and Becker, along with CO IV Bohuszewicz,

11  Fizer, and Zaborsky violated his rights under the Religious Land Use and

12  Institutionalized Persons Act (RLUIPA) (*id*.).

13      In his pending motion, McDaniel requests an injunction directing Defendants to

14  substitute the raw cabbage that is provided to him in his present kosher diet with an

15  alternative, such as hot cereal, rice, tuna, or peanut butter and jelly, which he states are

16  items already provided through the kosher diet (Doc. 30).  McDaniel avers that the raw

17  cabbage causes him gastrointestinal problems, which, in turn, interfere with his daily

18  obligatory prayers (*id*. at 3).

19      Mason, Miser, Bohuszewicz, and Zaborsky respond to the motion and assert that

20  McDaniel's request should not be granted because he has not shown that any of the

21  factors governing injunctive relief weigh in his favor, the named Defendants are not the

22  officials who approve religious diets, and McDaniel's claim that cabbage may affect his

23  digestive system in the future is merely speculation (Doc. 32).[1]  Defendants contend that

24

25

26      [1] A footnote in Defendants' response states that "Defendants served are Mason, Miser, Bohuszewicz, and Zaborsky" (Doc. 32 at 1 n. 1).  The docket reflects that service

27  was executed on Fizer on April 12, 2013 (Doc. 20), and service was executed on Becker on April 25, 2013 (Doc. 24) (sealed summons returned executed).  On August 29, 2013,

28  Fizer and Becker filed a Notice of Joinder to Defendants' Amended Answer (Doc. 36). Thus, all named Defendants have appeared in this action.

1    McDaniel seeks substituted meal items for personal reasons and not for religious or

2    medical needs.

3    **II.      Preliminary Injunction**

4            "A preliminary injunction is 'an extraordinary and drastic remedy, one that should

5    not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"

6    *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*,

7    520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*,

8    555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary

9    remedy never awarded as of right").  A plaintiff seeking a preliminary injunction must

10   show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable

11   harm without an injunction, (3) the balance of equities tips in his favor, and (4) an

12   injunction is in the public interest.  *Winter*, 555 U.S. at 20.  "But if a plaintiff can only

13   show that there are 'serious questions going to the merits'—a lesser showing than

14   likelihood of success on the merits—then a preliminary injunction may still issue if the

15   'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter*

16   factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th

17   Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th

18   Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . .

19   must be balanced, so that a stronger showing of one element may offset a weaker

20   showing of another." *Lopez*, 680 F.3d at 1072.

21          Regardless of which standard applies, the movant "has the burden of proof on each

22   element of the test."  *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016,

23   1027 (E.D. Cal. 2000).  Further, there is a heightened burden where a plaintiff seeks a

24   mandatory preliminary injunction, which should not be granted "unless the facts and law

25   clearly favor the plaintiff."  *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441

26   (9th Cir. 1986) (citation omitted); *see Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399,

27   1403 (9th Cir. 1993) ("mandatory preliminary relief is subject to heightened scrutiny").

28

1        The Prison Litigation Reform Act imposes additional requirements on prisoner

2  litigants who seek preliminary injunctive relief against prison officials and requires that

3  any injunctive relief be narrowly drawn and the least intrusive means necessary to correct

4  the harm.   18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d

5  987, 999 (9th Cir. 2000).

6  **III.    Discussion**

7        **A.    Injunctive Relief Related to Underlying Claim**

8        Before addressing the *Winter* factors, the Court considers Defendants' argument

9  that the allegations in McDaniel's pending motion are "wholly outside" the underlying

10  issue in this case (Doc. 32 at 2).   A party seeking injunctive relief must show "a

11  relationship between the injury claimed in the party's motion and the conduct asserted in

12  the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (affirming denial

13  of an injunction request based on alleged retaliatory conduct unrelated to the basis of a

14  prisoner's § 1983 claim). A court should not grant an injunction "when the injunction in

15  question is not of the same character, and deals with a matter lying wholly outside the

16  issues in the suit." *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997).

17        In his First Amended Complaint, McDaniel averred that he was originally

18  provided a lacto-vegetarian diet, which met both his religious and dietary/health needs

19  because he was able to maintain his weight and perform his obligatory prayers (Doc. 7 at

20  5, 10).   When that diet was discontinued, he was placed on the vegan diet; however,

21  because the vegan diet was harmful to his digestive system, he sought medical assistance

22  and was placed on the allergy-bland diet (*id.* at 6).   But the allergy-bland diet included

23  "unclean meat" not permitted under Muslim dietary laws (*id.*).   It was for this reason that

24  McDaniel sought the kosher diet (*id*. at 6, 11).

25        In his pending motion, McDaniel states that although he now receives the kosher

26  diet, meals served to him twice a day contain raw cabbage, which causes him

27  gastrointestinal problems and stomach pain, which in turn interfere with his ability to

28  conduct his daily prayers (Doc. 30 at 3).   He avers that he was seen by medical for his

1    digestive problems and advised to stop eating the raw cabbage (*id*. at 4).   McDaniel

2    indicates that he has since been losing weight; therefore, he seeks an injunction to

3    substitute the cabbage for other available kosher foods so that he can maintain his weight

4    and health for prayers and fasting (*id*. at 4, 6).

5          Defendants assert that McDaniel now receives the kosher diet he requested in the

6    underlying complaint (Doc. 30; *see* Doc. 7 at 22).   But McDaniel alleges that the relief

7    provided does not correct the harm; indeed, it has caused him additional harm.   He is not

8    required to file a separate lawsuit to challenge the adequacy of Defendants' response to

9    his complaint in this action.   Moreover, the Court considers McDaniel's allegations in his

10   preliminary injunction motion to the extent that they clarify the claims set forth in his

11   amended pleading.  *See Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (because the

12   plaintiff was pro se, the complaint's factual allegations and legal theories could be refined

13   in subsequent filings); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that

14   the pro se litigant "bolstered his claim by making more specific allegations . . . in later

15   filings"); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (reiterating that

16   where a petitioner is pro se, particularly in civil rights cases, courts must "construe the

17   pleadings liberally and [ ] afford the petitioner the benefit of any doubt") (citation

18   omitted).

19         Accordingly, the Court finds that the allegations in McDaniel's motion relate to

20   the issue in this case, and the request for an injunction may be entertained.

21         **B.      Likelihood of Success on the Merits and Irreparable Harm**

22         "Inmates clearly retain protections afforded by the First Amendment . . . including

23   its directive that no law shall prohibit the free exercise of religion."  *O'Lone v. Estate of*

24   *Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).   To succeed on the merits of his

25   First Amendment claim, McDaniel must show that Defendants have burdened the

26   practice of his religion by preventing him from engaging in conduct—which he sincerely

27   believes is consistent with his faith—without a justification reasonably related to

28   legitimate penological interest.  *See Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008).

1    Whether a regulation is reasonably related to legitimate penological interests is

2    determined by applying the four factors set out in *Turner v. Safley*. *Id.*, citing 482 U.S.

3    78, 89 (1987).

4         To succeed on the merits of his RLUIPA claim, McDaniel must show that the

5    defendants imposed a substantial burden on his religious exercise. *See* 42 U.S.C.

6    § 2000cc-1(a)(1)-(2); *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). If he

7    makes that showing, Defendants must prove that the burden both furthers a compelling

8    governmental interest and is the least restrictive means of achieving that interest.

9    *Warsoldier*, 418 F.3d at 995.

10        Based on the averments in his pleading and his motion, McDaniel is likely to

11   succeed in establishing his sincere belief that eating a diet in accordance with Muslim

12   dietary laws and conducting prayers and fasts are consistent with his faith. *See Shakur*,

13   514 F.3d at 885 (to implicate the Free Exercise Clause, a belief must be "sincerely held"

14   and "rooted in religious belief"). Thus, the Court turns to the likelihood of establishing

15   that Defendants have burdened McDaniel's religious practice.

16        The Ninth Circuit has held that inmates "have the right to be provided with food

17   sufficient to sustain them in good health that satisfies the dietary laws of their religion."

18   *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993) (citation omitted). "[A] prisoner's

19   religious dietary practice is substantially burdened when the prison forces him to choose

20   between his religious practice and adequate nutrition." *Nelson v. Miller*, 570 F.3d 868,

21   869 (7th Cir. 2009); *see Warsoldier*, 418 F.3d at 996 (a prison policy that "intentionally

22   puts significant pressure on inmates . . . to abandon their religious beliefs . . . imposes a

23   substantial burden on [the inmate's] religious practice"). McDaniel alleges that the raw-

24   cabbage-filled kosher diet causes him stomach problems which interfere with his prayers;

25   thus, eating it would burden his religious practice but not eating it causes weight loss,

26   thereby endangering his health (Doc. 30 at 9-10). His position is similar to the plaintiff in

27   *Shakur*, who was faced with a "Hobson's choice" of "eating the vegetarian diet that is

28   Halal but disruptive to his religious activities, eating the regular diet that is Haram and

1    forbidden by his religion, or changing his religious designation to Jewish simply to obtain

2    the desired kosher meat meals." 514 F.3d at 889.

3         Defendants do not deny that the kosher diet provided to McDaniel includes raw

4    cabbage twice a day, nor do they dispute McDaniel's claims that he has been seen by

5    medical personnel for gastrointestinal problems and that he has lost weight. Instead, they

6    contend that McDaniel makes unsupported and vague assertions that his constitutional

7    rights are violated due to the denial or delay of a religious diet (Doc. 32 at 5).  But

8    Defendants misconstrue the issue. Although Count I concerns an alleged prior denial of a

9    kosher diet, in his motion, McDaniel is not alleging an unconstitutional denial or delay of

10   a religious diet.  Consistent with his First Amended Complaint, he is alleging denial of a

11   diet that meets both his religious and dietary/health needs.  McDaniel specifically alleges

12   that the religious diet he is being provided is insufficient to sustain his health. As stated,

13   if this is established, it would amount to a constitutional violation. *Ward*, 1 F.3d at 877.

14   In failing to address the specific allegations raised in the motion, Defendants also fail to

15   present any argument regarding how the *Turner* factors apply to McDaniel's requested

16   accommodation or whether the burden imposed furthers a compelling governmental

17   interest.

18        Nonetheless, because McDaniel seeks mandatory relief—compelling Defendants

19   to take action rather than precluding them from acting—he is subject to heightened

20   scrutiny.  McDaniel does not specify what his current medical/physical condition is or

21   how his religious practice is being affected; i.e., exactly how much weight he has lost,

22   how his health is affected, whether he is able to conduct prayers, whether he is able to

23   fast in preparation for Ramadan, etc.  More importantly, he does not support his motion

24   with a sworn declaration.

25        Consequently, McDaniel is also unable to satisfy the heightened showing required

26   to establish irreparable harm.  *See Ariz. Dream Act. Coalition v. Brewer*, --- F. Supp.

27   2d ----, 2013 WL 2128315, at *20 (D. Ariz. May 16, 2003) ("when seeking a mandatory

28   injunction, . . . an even greater showing of injury is required); *see also Marlyn*

1  *Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)

2  (mandatory injunctions generally are not granted unless the harm is extreme or very

3  serious); *but see Elrod v. Burns*, 427 U.S. 347, 373 (1976) (the "loss of First Amendment

4  freedoms, for even minimal periods of time, unquestionably constitutes irreparable

5  injury"); *Luckette v. Lewis*, 883 F. Supp. 471, 483 (D. Ariz. 1995) (the "loss of an ability

6  to practice a central tenet of one's religion for any extended amount of time is clearly an

7  irreparable injury").   Because McDaniel cannot satisfy his burden of showing a

8  likelihood of irreparable harm, the remaining *Winter* factors need not be addressed.

9         In short, absent specific facts and supporting evidence, the Court cannot determine

10  whether the facts and law *clearly* favor McDaniel, despite Defendants' failure to argue a

11  legitimate or compelling penological interest. *See Dahl*, 7 F.3d at 1403.  A mandatory

12  injunction is therefore not warranted, and the Motion for Preliminary Injunction will be

13  denied without prejudice to refiling.

14         **IT IS ORDERED that** the reference to the Magistrate Judge is **withdrawn** as to

15  McDaniel's Motion for Preliminary injunction (Doc. 30), and the Motion is **denied**

16  without prejudice.

17         Dated this 29th day of October, 2013.

G. Murray Snow
United States District Judge

- 8 -